## In re AIR CRASH DISASTER AT SIOUX CITY, IOWA, ON JULY 19, 1989.

### No. MDL-817.
### Nos. 90 C 4973, 90 C 4986 and 91 C 1219.

United States District Court,
N.D. Illinois, E.D.

Dec. 26, 1991.

Philip H. Corboy, Francis Patrick Murphy, Corboy & Demetrio, P.C., Chicago, Ill., David E. Rapoport, Becker, Baizer & Rapoport, Highland Park, Ill., Arthur Alan Wolk, Wolk, Genter & Harrington, Philadelphia, Pa., Kevin M. Forde, Kevin M. Forde, Ltd., Chicago, Ill., for plaintiffs.

John W. Adler, Fred C. Begy III, Richard A. Walker, Adler, Kaplan & Begy, Chicago, Ill., for defendant United Airlines.

Steven L. Hogan, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., Norman J. Barry, Daniel Cummings, Alan S. Madans, Rothschild, Barry & Myers, Chicago, Ill., for defendant McDonnell Douglas.

Charles W. Douglas, Sara J. Gourley, Sidley & Austin, Chicago, Ill., for defendant General Elec.

Michael J. Merlo, Craig A. Chapello, Pretzel & Stouffer, Chicago, Ill., for Titanium Metals.

Michael H. West, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for ALCOA.

John Hoff, Lapin, Hoff, Slaw & Laffey, Chicago, Ill., for Reactive Metals.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this consolidated multidistrict litigation arising from an air crash at Sioux City, Iowa, plaintiffs Jan Brown, Donna McGrady and Susan White move for partial summary judgment on their strict products liability claims against defendants McDonnell Douglas Corporation and General Electric Company.

## BACKGROUND

On July 19, 1989, United Airlines Flight 232 from Denver to Chicago crashed during an attempted emergency landing at Sioux City, Iowa. Of the 296 people on board, 112 were killed as a result of the crash. Plaintiffs were flight attendants on the ill-fated Flight 232.

The crew of Flight 232 was forced to attempt an emergency landing at Sioux City shortly after an uncontained explosion in the aircraft's rear engine. The explosion resulted from the fragmentation and separation of the engine's number one fan disk. Plaintiffs' facts ¶¶ 20–21. The fragments of the fan disk exited the engine housing at a high velocity and severed two of the aircraft's three hydraulic lines, resulting in a total loss of hydraulic fluid in all three of the aircraft's independent hydraulic systems. Plaintiffs' facts ¶¶ 12, 21, 23. The total loss of hydraulic fluid rendered the aircraft's hydraulic-powered flight controls inoperable. Plaintiffs' facts ¶¶ 21–23. The crew attempted to maneuver the aircraft down for an emergency landing by using differential engine power from the two remaining engines. However, the total disabling of the aircraft's conventional flight controls frustrated the crew's attempt to land the plane safely.

The doomed aircraft, owned and operated by United Airlines, was a DC–10 manufactured by McDonnell Douglas in California. Plaintiffs' facts ¶ 13; McDonnell Douglas' facts ¶ 5. General Electric designed and manufactured the CF6–6 engines used to power the aircraft, including the rear engine that failed in the Sioux City accident. Plaintiffs' facts ¶ 14. The number one fan disk that fragmented and caused the uncontained engine failure was also designed and manufactured by General Electric. Plaintiffs' facts ¶ 15. The subject fan disk contained an undetected metallurgical flaw called a hard alpha inclusion when General Electric sold the CF6–6 engine to McDonnell Douglas on January 22, 1972. Plaintiffs' facts ¶¶ 15–16. The fragmentation of the General Electric fan disk occurred as a result of a fatigue crack that developed in the area of the hard alpha inclusion subsequent to the manufacture and sale of the engine. Plaintiffs' facts ¶ 24. The fatigue crack in the fan disk went undetected during regular maintenance shop inspections by United Airlines, including the final inspection of the fan disk conducted in October 1988. General Electric's facts ¶ 15 and additional facts ¶¶ 8–9.

## DISCUSSION

Plaintiffs move for summary judgment on their strict products liability claims against General Electric and McDonnell Douglas. Summary judgment must be granted when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (*per curiam*), cert. denied, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

■ Consideration of plaintiffs' motions may proceed only on the basis of evidence that is admissible at trial. *Colan v. Cutler–Hammer, Inc.*, 812 F.2d at 365 n. 14 (7th Cir.); *Turner v. Chicago Housing Authority*, 760 F.Supp. 1299, 1302 (N.D.Ill. 1991). Plaintiffs' motions and accompanying 12(m) statement liberally refer to the National Transportation Safety Board's Accident Report ("the NTSB report") addressing the Sioux City accident. Plaintiffs may not use any portion of the NTSB report for any purpose at trial. *See* Memorandum Opinion and Order of December 20, 1991. Accordingly, the court shall not consider the NTSB report in deciding plaintiffs' present motions.

### I. General Electric

Plaintiffs move for summary judgment on their strict liability claim against General Electric. As an initial matter, the parties appear to agree that the substantive law of Ohio should govern the issue of General Electric's liability. However, the question of which state's substantive law governs claims of liability against General Electric has not yet been addressed in

these proceedings. Accordingly, the court will address the issue now.

■ Plaintiffs each filed suit in an Illinois forum, thus Illinois choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Illinois applies the "most significant relationship" test to determine the applicable substantive law in tort actions. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). Four contacts are particularly important in determining which state has the most significant relationship to the occurrence and the parties: (1) the place of injury, (2) the place of the conduct causing the injuries, (3) the domicile and place of business of the parties, and (4) the place where the parties' relationship is centered. *Id.*, 46 Ill.2d at 47–48, 262 N.E.2d at 596.

Iowa is the place of injury, the first contact under Illinois tort choice of law analysis. However, Iowa's interests have not been accorded great weight in earlier choice of law determinations during these proceedings, principally because the eventual crash in Iowa was an entirely fortuitous, unforeseen emergency landing in Sioux City. *In re Air Crash Disaster at Sioux City*, 734 F.Supp. 1425, 1435 (N.D.Ill.1990). The second contact, the place where the injury-causing conduct occurred, points to Ohio. Ohio has a substantial and ongoing interest in the present action because the allegedly defective fan disk was manufactured and installed in a General Electric engine at a General Electric plant in Ohio. Ohio's status as the place where the injury-causing conduct occurred makes it the only state with a clear substantial ongoing relationship to the present action against General Electric because examination of the remaining two contacts lead to inconclusive results.

General Electric is a New York corporation with its principal place of business in New York. The parties agree that plaintiff Brown is a citizen of Illinois and that the McGrady plaintiffs were citizens of Michigan at the time they filed their action. The parties dispute the domicile of plaintiff White. White contends that she was a citizen of Illinois at the time of filing, while General Electric contends White was an Ohio citizen. This issue need not be resolved, as the resolution would contribute little to the choice of law analysis because the domicile contact does not lead to a clear answer. Finally, the parties' relationship is not centered in any particular state, thus this contact is equally inconclusive. Accordingly, Ohio law shall govern the liability claims against General Electric in these actions.

■ Plaintiffs' strict liability claims arise under Ohio Rev.Code § 2307.73, governing product liability claims against manufacturers. That statute states:

> (A) A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:
>
> (1) ... the product was defective in manufacture or construction as described in section 2307.74 of the Revised Code ...;
>
> (2) A defective aspect of the product in question described in division (A)(1) ... was a proximate cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Rev.Code § 2307.73(A). According to the provisions of Ohio Rev.Code § 2307.74:

> A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or other performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

Plaintiffs contend that the product in question, the General Electric fan disk, was defective because it was sold containing a hard alpha inclusion. The evidence is uncontroverted that the hard alpha inclusion contained in the fan disk had an undesirable metallurgical flaw. However, plain-

tiffs have not established that the metallurgical flaw constitutes a "defect" within the meaning of the statute.

Ohio courts appear not to have had an opportunity to construe the meaning of the "material deviation" standard stated in § 2307.74 since the implementation of Ohio's product liability statutes in January 1988. A literal application of § 2307.74 requires that plaintiffs establish that the flaw constitutes a material deviation from design specification or industry performance standards. Evidence exists in the record that it is well known among users of titanium that titanium ingot has a certain incidence of hard alpha inclusion. *See* General Electric Exh. J, Affidavit of Harold Margolin ¶ 5 ("Margolin Aff."). Moreover, evidence in the record suggests that users of titanium ingot are generally aware that it is not possible to completely eliminate hard alpha inclusions and that these inclusions may pass the most rigorous inspection processes undetected. *See* General Electric Exh. I, Affidavit of James Williams at 2. However, because of titanium's other metallurgical qualities, the aircraft industry often specifies the use of titanium over other metals despite the incidence of inclusions. Margolin Aff. ¶ 5. This evidence inferentially suggests a general aircraft industry acceptance of titanium containing some degree of hard alpha inclusion in products manufactured from titanium.

Additionally, Ohio case law addressing product liability claims arising prior to the implementation of the Ohio product liability statutes further suggests that plaintiffs' bare equation of a hard alpha inclusion with an actionable product defect should not be credited at the present time. In cases arising prior to the implementation Ohio's product liability statutes, Ohio courts applied a "consumer expectation" standard to determine if a product was defective in its manufacture. *See e.g., State Farm Fire & Casualty Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489 (1988). Under the consumer expectation standard, a product was regarded as defective if it was more dangerous than an ordinary consumer would expect when the product is used in an intended or reasonably foreseeable manner. *See Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 567 N.E.2d 1027, 1030 (1991). If a consumer expectation construction of § 2307.74 is applied to the present dispute, the testimonial evidence regarding industry awareness and acceptance of some level of hard alpha inclusion in titanium again suggests an issue of material fact regarding industry standards and end-user expectations regarding the characteristics of titanium ingot. Thus, absent further evidence or explication of Ohio law from plaintiffs, plaintiffs have failed to establish that no material facts exist and that they are entitled to judgment as a matter of law with respect to their theory that the mere presence of a hard alpha inclusion in the General Electric fan disk constitutes a statutorily significant product defect.

Even accepting plaintiffs' contention that the hard alpha inclusion constitutes an actionable defect in the General Electric fan disk, issues of material fact also exist regarding proximate causation. Plaintiffs describe their claim that the hard alpha inclusion proximately caused their injuries as a "proposition [that] proves itself." Plaintiffs' Memorandum at 9. This breezy assertion falls short of meeting plaintiffs' heavy burden at the present summary judgment stage. Under Ohio law, the question of proximate cause is deemed a factual question to be decided by the jury in all but the most extreme cases. *Miles v. Kohli & Kaliher Assoc., Ltd.*, 917 F.2d 235, 249 (6th Cir.1990) (applying Ohio law) (citations omitted). Plaintiffs fail to establish that the present case provides the extreme circumstances that might warrant removing the question of proximate cause from the jury.

Plaintiffs necessarily base their claim against General Electric upon a theory involving a lengthy chain of causation. Plaintiffs' injuries occurred as a result of the crash of Flight 232. That crash, by plaintiffs' own characterization, "resulted from a loss of control" of the aircraft. Plaintiffs' Memorandum at 10. The loss of control, by plaintiffs' own characterization,

resulted from a loss of hydraulic power that in turn was the result of a "loss of all hydraulic fluid." Plaintiffs' facts ¶ 23. The loss of fluid resulted from a severing of hydraulic lines when the stage one fan disk fragmented and separated during the flight. The fan disk separated, according to plaintiffs, as a result of a hard alpha inclusion.

General Electric responds that plaintiffs' evidence regarding the proximate cause of the crash raises material issues of fact regarding intervening causation that may serve to cut off General Electric from all liability. As General Electric notes, in a strict liability action under Ohio law, the causal connection between an allegedly defective product and a plaintiff's injuries may be broken by an intervening act. *R.H. Macy & Co. v. Otis Elevator Co.*, 51 Ohio St.3d 108, 554 N.E.2d 1313, 1317 (1990). An intervening cause may cut off the manufacturer's liability where the intervening cause is unforeseeable and is the proximate cause of the injury or damage. *Id.*

Plaintiffs' designated expert, Manuel Raefsky, has stated that the crash was caused by a metal fatigue crack in the failed engine's fan disk that developed over a 17 year period and should have been detected by United Airlines during five overhaul shop visits prior to the crash. General Electric Exh. C, Deposition of Manuel Raefsky at 142, 151–53 ("Raefsky Dep."). Additionally, plaintiffs' hydraulics expert, James Foody, has alternatively opined that the crash was caused by a flaw in the design of the DC–10 aircraft that rendered all of the aircraft's hydraulic systems vulnerable to a single uncontained engine failure. General Electric Exh. D, Deposition of James Foody at 8–9, 15, 78–79; *see also* General Electric Exh. E, Statement of J.J. Foody regarding UAL–232 Accident. This evidence clearly creates material issues of fact regarding the related issues of proximate and intervening causation. Whether these causes subsequent to General Electric's alleged injury-causing

conduct were unforeseeable to General Electric, thus cutting off General Electric from liability, is an issue that is purely factual in nature under Ohio law and thus inappropriate for resolution at the summary judgment stage. *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 451 N.E.2d 815, 819–20 (1983); *Miles v. Kohli & Kaliher Assoc., Ltd*, 917 F.2d at 251 (intervening actor's failure to remedy a dangerous condition was not so patently unforeseeable as to justify the unusual measure of removing the question of proximate cause from consideration of the jury). Accordingly, plaintiffs have failed to establish that they are entitled to summary judgment on their strict liability claims against General Electric.

## II. McDonnell Douglas

Plaintiffs move for summary judgment on their strict liability claims against McDonnell Douglas under the same theory of the case they advanced against General Electric. Plaintiffs contend that McDonnell Douglas manufactured and sold a defective DC–10 because it contained a metallurgically flawed fan disk.[1] Plaintiffs also contend that their claims against McDonnell Douglas are governed by California's strict products liability law.

Although McDonnell Douglas does not take issue with plaintiffs' position that California substantive law governs all liability claims against it, the issue of which state's law governs claims of liability against McDonnell Douglas has not yet been formally resolved. Resolution of the choice of law issue again proceeds under the Illinois "most substantial relationship" test outlined in the previous section addressing claims against General Electric. *See Ingersoll v. Klein*, 46 Ill.2d at 47–48, 262 N.E.2d at 595–96 (1970). The only significant difference in the analysis as it applies to McDonnell Douglas is that the injury-causing conduct occurred in California. No other state has as substantial and

---

**1.** Plaintiffs and McDonnell Douglas filed supplemental papers in which they dispute the history of both the ill-fated DC–10 and the metallurgically flawed fan disk. However, the parties do not dispute the critical fact that McDonnell Douglas installed the flawed fan disk in a DC–10 that it then placed in the market.

ongoing a relationship to the claims against McDonnell Douglas as California. Accordingly, California law shall govern plaintiffs' liability claims against McDonnell Douglas.

■ In order to establish strict liability under California law against McDonnell Douglas on the basis of a manufacturing defect, plaintiffs must prove: (1) that the product was defectively manufactured; (2) the defect in the product existed at the time the DC–10 left McDonnell Douglas' control; (3) the alleged defect was the proximate cause of injury; and (4) the injury resulted from a foreseeable use of the product. *See e.g., Doupnik v. General Motors Corp.*, 225 Cal.App.3d 849, 859, 275 Cal.Rptr. 715 (1990). As under Ohio law, an actionable defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer. *Id.*

California, like Ohio, recognizes certain limits to actions based in strict liability. First, California recognizes the doctrine of intervening causation in strict product liability cases. *See e.g., Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 107 Cal.Rptr. 45, 507 P.2d 653 (1973). An intervening cause may cut off a defendant manufacturer's liability for a defective product where a plaintiff's injury is proximately caused by an unforeseeable intervening act. *See id.*, 9 Cal.3d at 69, 107 Cal.Rptr. at 56, 507 P.2d at 664.

Plaintiffs contend, with little supporting analysis, that the facts supporting summary judgment on their strict liability claims against General Electric under Ohio law equally favors summary judgment on their strict liability claims against McDonnell Douglas. Given the similarity of the product liability laws of Ohio and California, it is not surprising that plaintiffs' motion with respect to the claims against McDonnell Douglas fail for the same reasons as plaintiffs' claims against General Electric. As noted in the context of addressing the claims against General Electric, plaintiffs' own evidence raises issues of fact regarding the related issues of proximate and intervening causation. For example, plaintiffs' expert, Manuel Raef-sky, has testified that the crash was caused by a metal fatigue crack that should have been detected by United Airlines during subsequent inspections of the fan disk. Raefsky Dep. at 142, 151–53. This evidence, at a minimum, creates a strong inference of intervening causation. The foreseeability of a purported intervening cause is a question of fact. Thus, "[i]f there is room for reasonable men to differ as to whether the intervening act was reasonably foreseeable, then the question is properly left to the jury." *Id.*, citing *McEvoy v. American Pool Corp.*, 32 Cal.2d 295, 195 P.2d 783 (1948); Restatement (Second) of Torts § 453, comment e.

A second possible limit to plaintiffs' strict product liability claim against McDonnell Douglas is suggested in the seminal California case establishing the concept of strict liability in tort, which plaintiffs cite in support of the present motion. The court in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963), held that a manufacturer is strictly liable "when an article he places on the market, *knowing that it is to be used without inspection*, proves to have a defect that causes injury to a person." *Id.* 59 Cal.2d at 62, 27 Cal. Rptr. at 700, 377 P.2d at 900 (1963) (emphasis added). Evidence regarding United's failure to detect a metal fatigue crack thus may take on an even greater significance when viewed against the backdrop of *Yuba Power*, particularly to the extent that *Yuba Power* suggests that McDonnell Douglas may be absolved of liability as a matter of law if its DC–10 and fan disk were not to be used unless regularly inspected by their owner. Accordingly, plaintiffs fail to establish that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law with respect to their claims against McDonnell Douglas.

## CONCLUSION

Plaintiffs' motions for partial summary judgment against General Electric and McDonnell Douglas are denied.