**In re AIRCRASH DISASTER NEAR ROSELAWN, INDIANA ON OCTOBER 31, 1994.**

No. 95 C 4593.
MDL No. 1070.

United States District Court,
N.D. Illinois,
Eastern Division.

May 6, 1996.

**737**

Charles William Douglas, Sara J. Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, for Simmons Airlines, Inc.

Nicholas J. Bua, Judge, Burke, Weaver & Prell, Chicago, IL, for Nicholas J. Bua.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Defendants' motion requesting a ruling as to the substantive law applicable to the issue of compensatory damages is presently before the Court in these consolidated actions arising out of the tragic and fatal crash of American Eagle Flight 4184 near Roselawn Indiana on October 31, 1994. Specifically, the Airline and ATR defendants [1] (collectively "defendants") seek a determination that Indiana law governs the issue of compensatory damages in six cases involving Indiana decedents.[2] In response to defendants' motion, plaintiffs argue that Illinois law should govern the issue of compensatory damages in these six cases. For the reasons that follow, defendants' motion for a choice of law ruling applying Indiana law to the issue of compensatory damages is granted.

### RELEVANT FACTS [3]

American Eagle Flight 4184 was carried by an Avions de Transport Regional (ATR) aircraft built in France. During the course of its operations by Simmons Airlines (d/b/a American Eagle), the aircraft was serviced in six states including Illinois, Indiana, Iowa, Michigan, Texas, and Washington. On October 31, 1994, prior to the accident, the aircraft flew trips from Milwaukee, Wisconsin to Chicago, Illinois; from Chicago to Lansing,

Janice R. Forde, Kevin Michael Forde, Kevin M. Forde, Ltd., Chicago, IL, James T. Crouse, Speiser, Krause, Madole & Mendelsohn, San Antonio, TX, Michael L. Slack, Slack & Davis, L.L.P., Austin, TX, Gerard R. Lear, Speiser, Krause, Madole & Lear, Rosslyn, VA, Terry O'Reilly, Law Offices of O'Reilly & Collins, Menlo Park, CA, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, for plaintiffs.

Storrs Whitworth Downey, Landau, Omahana & Kopka, Ltd., Vernon Hills, IL, for Ingersoll Milling Machine Company.

Michael P. Connelly, Thomas F. Tobin, John M. Kelly, Connelly & Schroeder, Chicago, IL, for Avions de Transport Regional, G.I.E., ATR Support, Inc., Alenia S.P.A., Aerospatiale, Inc.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Charles William Douglas, Sara J. Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, for American Airlines, Inc., AMR Corporation.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, for AMR Leasing Corporation, AMR Eagle, Inc., Robert H. Mittelman.

1. The "Airline defendants" named in these actions include AMR Corporation, American Airlines, Inc., and Simmons Airlines, Inc. The "ATR defendants" include Avions de Transport Regional, G.I.E., A.T.R. Marketing, Inc., and A.T.R. Support, Inc.

2. The six cases are *Cunningham v. AMR Corp.,* No. 95 C 0946; *Ferryman v. AMR Corp.,* No. 95 C 6337; *Guba v. AMR Corp.,* No. 95 C 0633; *MacDonald v. AMR Corp.,* No. 95 C 0630; *Snyder v. AMR Corp.,* No. 95 C 2133; and *Stansberry v.*

*AMR Corp.,* No. 95 C 6336. The parties have subsequently settled the *Stansberry* case and thus that case is no longer at issue. Accordingly, this opinion will not address the facts of that case.

3. The following recitation of facts is drawn from the parties' jointly submitted "Stipulation Concerning Choice of Law Motion on Compensatory Damages in *Cunningham, Ferryman, Guba, MacDonald, Snyder* and *Stansberry.*"

Michigan; from Lansing back to Chicago; and from Chicago to Indianapolis, Indiana. The aircraft's final flight was the fatal flight, Flight 4184, a scheduled non-stop flight from Indianapolis to Chicago, during which the aircraft crashed in Indiana near the town of Roselawn, about 10 miles from the Illinois border.[4] Flight 4184's flight crew, which was Chicago-based, first picked up the aircraft in Chicago, and flew the trip from Chicago to Indianapolis immediately preceding the accident flight. The captain of Flight 4184 was Orlando Aguiar, a resident of Round Lake Park, Illinois; the first officer was Jeffrey Gagliano, a resident of Eagle, Wisconsin.

Each of the decedents in the subject actions were domiciled in Indiana on the date of the accident.[5] Defendants represent to the Court that each decedent's estate is being administered in Indiana, see Defs.' Mem. Supp.Mot. for Choice of Law Ruling at 9, and plaintiffs do not dispute this contention. In this vein, defendants further note that all of the personal representatives of the estates and virtually all of the potential beneficiaries are Indiana residents.[6] Three of the decedents, Messrs. Cunningham, MacDonald, and Snyder, were employed by Delco Electronics in Kokomo, Indiana. Mr. Cunningham's surviving wife and three adult children are domiciled in Indiana. Similarly, Mr. MacDonald's surviving wife and minor child are domiciled in Indiana and Mr. Snyder's surviving wife and two adult children are domiciled in Indiana. Ms. Guba worked as an intermittent employee for the Joint Commission for the Accreditation of Healthcare ("Commission"), which is headquartered in Oakbrook Terrace, Illinois, and she also worked part-time for a Veterans Administration Hospital located in Indiana. Her surviving mother and two of her adult sisters are domiciled in Indiana; two other adult sib-

lings are domiciled in California. Ms. Ferryman was employed by American Drug Stores in Oakbrook, Illinois. Her surviving husband and adult children are domiciled in Indiana.

At the time of the accident, Messrs. Cunningham, MacDonald and Snyder were traveling on business for Delco Electronics, a subsidiary of General Motors. These men were en route from Indianapolis to Sao Paolo, Brazil, with connections through Chicago and Miami, and with a return flight to Indianapolis, with connections through Miami and Nashville. They purchased their tickets through Delco, and the tickets were issued through a General Motors travel agent located in Michigan. Ms. Guba was traveling on business for the Commission from Indianapolis to Pittsburgh, with a connection through Chicago. She purchased her ticket through the Commission, and the ticket was issued through a travel agency located in Oakbrook Terrace, Illinois, which is used by the Commission. Ms. Ferryman was travelling on business from Indianapolis to Chicago for a meeting at American Drug Stores in Oakbrook, Illinois, with a return ticket to Indianapolis. She purchased her ticket through American Drug Stores, and the ticket was issued through a travel agency located in Oakbrook, Illinois, that is used by American Drug Stores.

## ANALYSIS

 As this Court's first opinion in this multidistrict litigation indicates, federal jurisdiction over these cases arises under the Foreign Sovereign Immunities Act ("FSIA"). See In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994, 909 F.Supp. 1083 (N.D.Ill.1995). Thus, the rules of Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct.

---

**4.** Although Flight 4184 never left Indiana before crashing, plaintiffs emphasize that the flight was coordinated with the federal Traffic Management Coordinator at the Chicago Air Route Traffic Control Center ("CARTCC") located in Aurora, Illinois. The Coordinator approved the release of Flight 4184 into the airspace controlled by the Traffic Control Center in Aurora. Flight 4184 was then released for takeoff by the local controller located in Indianapolis into the airspace controlled by the Indianapolis Air Route Traffic Control Center. At the time of the accident, Flight

4184 was in communication with and under the control of the CARTCC.

**5.** The parties could not agree as to the domicile of one of the decedents, Bradley Stansberry; however, in view of the parties' representation that the Stansberry case has settled, we need not resolve that dispute.

**6.** The only exceptions are two of Ms. Guba's adult siblings who live in California.

817, 822, 82 L.Ed. 1188 (1938) (federal court exercising diversity jurisdiction must apply the substantive law of the forum state) and *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state) do not directly apply. In FSIA actions, courts are divided as to whether the forum state's choice of law rules should apply or whether federal common law should govern. *Compare Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir.1992) (finding that in the FSIA context "federal common law choice of law rules apply, not the choice of law rules of the forum state"), and *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1991) (finding that where jurisdiction is based on the FSIA, federal common law applies to the choice of law determination) *with Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 959–61 (2d Cir.1991) (finding that "forum law provides the proper choice of law rules for FSIA cases"). In the instant case, however, the issue of whether to apply federal common law or the law of Illinois (where these cases were originally filed) is of no consequence because both Illinois and federal common law look to the Restatement (Second) of Conflict of Laws ("Second Restatement") for deciding choice of law questions. *See Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970) (adopting the Second Restatement's most significant relationship test); *Esser v. McIntyre*, 169 Ill.2d 292, 661 N.E.2d 1138, 1141 (1996) (noting Illinois' adoption of the most significant relationship test); *Schoenberg*, 930 F.2d at 782 ("Federal common law follows the approach of the Restatement (Second) of Conflict of Laws."); *see also Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1359–60 (D.Del.1993) (citing cases). Accordingly, this Court shall apply the Second Restatement's most significant relationship test in determining what law governs the issue of compensatory damages in these six actions.

Under the Second Restatement, as a general matter, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("SECOND RESTATEMENT") § 145(1). Section 6, in turn, states that:

> the factors relevant to the choice of the applicable rule of law include[:]
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6.[7] Section 145 further instructs that:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2). The Court further notes that with regard to wrongful death and personal injury actions, the Second Restatement directs that:

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to

---

**7.** Courts have noted that some of these factors, such as the protection of justified expectations and predictability, are more relevant in the context of consensual relationships rather than in

tort situations, which arise out of unplanned occurrences. *See, e.g., In re Air Crash Disaster at Boston, Mass. on July 31, 1973*, 399 F.Supp. 1106, 1111 n. 8 (D.Mass1975).

the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied. *Id.* §§ 175 (wrongful death), 146 (personal injury); *see also In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 611 (7th Cir.) (noting that the Second Restatement's most significant relationship test "incorporates a presumption that the local law of the state where the injury occurred should govern, unless another state has a 'more significant relationship' to the occurrence or to the parties," citing *Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970)), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *Esser*, 169 Ill.2d at 298, 661 N.E.2d at 1141 (noting that under the Second Restatement test "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties").

For present purposes, it is significant to note that the Second Restatement embraces the doctrine of depecage—whereby "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." SECOND RESTATEMENT § 145(2); *see also In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d at 610–11 (approving the use of depecage, which the Court defined as "the process of applying rules of different states on the basis of the precise issue involved"). Thus, it is important to understand that the search for the applicable law is not a general one, but rather it is one that takes proper notice of the fact that the significance of a state's relationship to a particular aviation disaster may vary as a function of the particular issue presented. Consequently, under the doctrine of depecage, it is not uncommon for courts to apply the substantive law of several different states in resolving air crash cases. *See, e.g., In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on Nov. 15, 1987*, 720 F.Supp. 1445, 1448 n. 3 (D.Colo.1988) (noting "[a]lthough depecage may lead to the application of the law of different jurisdictions to different issues within the same case, the approach is widely applied to the multifaceted issues involved in aviation litigation"); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on Nov. 15, 1987*, 720 F.Supp. 1505, 1528 (D.Colo.1989) (noting that in this multi-district air crash litigation the substantive law of three states applied: Texas law governed punitive damages because Texas had the greatest interest in regulating the relevant corporate conduct; by agreement, Colorado law governed issues of liability for negligence because no true conflict of law existed; and, by agreement, issues of compensatory damages were governed by the law of each plaintiff's domicile because "the domicile state has the most significant interest in placing a value on the injuries suffered"), *rev'd and remanded on other grounds*, 964 F.2d 1059 (10th Cir.1992); *In re Disaster at Detroit Metro. Airport on August 16, 1987*, 750 F.Supp. 793 (E.D.Mich.1989) (applying California law for product liability rules but applying Michigan and California law for punitive damages); *Foster v. United States*, 768 F.2d 1278, 1280–81 (11th Cir.1985) (highlighting that the precise issue presented to the court involved which wrongful death statute to apply and that the issue of which state's law regarding liability would apply was not before the court); *cf. In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 734 F.Supp. 1425 (N.D.Ill.1990) (holding that Illinois law governed punitive damage claims against airline, California law governed punitive damage claims against aircraft manufacturer, and Ohio law governed punitive damage claims against engine manufacturer).

In view of the importance of the particular legal issue to the choice of law analysis, it is worth bearing in mind that the choice of law motion presently before the Court is expressly limited to the issue of the availability of *compensatory* damages. In the event that this, or any other, court is called upon to determine the law governing punitive damages, the relevant state contacts must again be evaluated anew. With the foregoing standards in mind, we now turn to our specific inquiry.

At the outset, we note that there are several states that have some plausible connection to this litigation; however, with respect

to the motion presently before the Court, we only consider the relationships of Indiana, Illinois and Texas. These are the only states that the parties submit as providing the governing law and this Court's independent review confirms that no other state has any significant interest in the applicable law of compensatory damages to be applied in these cases. As noted earlier, the defendants maintain that Indiana law should govern the availability of compensatory damages and the Indiana plaintiffs maintain that Illinois law should apply to the Indiana plaintiffs' actions. Additionally, in a Minute Order dated March 28, 1996, this Court granted leave to file a choice of law brief submitted by six other plaintiffs, whose cases were originally filed in Texas, wherein the plaintiffs contend that Texas law should apply to the six Indiana decedent cases.[8]

As an initial matter, we note that the substantive laws of Illinois, Indiana and Texas do indeed present an "actual" or "real" conflict insofar as there are several significant differences in their compensatory damages laws. For instance, under Indiana law, adult children must be financially dependent in order to recover for the wrongful death of a parent, *see* IND.CODE ANN. § 34–1–1–2 (Burns 1993) (stating that damages shall inure "to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin"); *Thomas v. Eads,* 400 N.E.2d 778, 782–83 (Ind.App.1980). Under Illinois law, however, adult children need not be financially dependent to recover for wrongful death, *see Cooper v. Chicago Transit Auth.,* 153 Ill.App.3d 511, 518, 106 Ill.Dec. 448, 452, 505 N.E.2d 1239, 1243 (1st Dist.1987); *In re Estate of Wiese,* 178 Ill.App.3d 938, 942, 128 Ill.Dec. 95, 97, 533 N.E.2d 1183, 1185 (3d Dist.1989). This Court's reading of the relevant Texas caselaw indicates that Texas, like Illinois, does not require an adult child to be financially dependant in order to recover for wrongful death. Texas courts allow adult children to recover for loss of society in wrongful death actions and such a recovery does not appear to be predicated on a finding of financial dependence. *See Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 635–36 (Tex. 1986).

The laws of these states also diverge with respect to whether a decedent's siblings may recover for wrongful death. Under Texas law, siblings may not recover in a wrongful death action. *See* TEX.REV.CIV.STAT.ANN. § 71.004 (stating that an action for wrongful death is "for the exclusive benefit of the surviving spouse, children, and parents of the deceased"); *Clift by Clift v. Fincannon,* 657 F.Supp. 1535 (E.D.Tex.1987) (finding that siblings have no standing to bring a wrongful death action in light of the statute's clear language limiting wrongful death claims to spouses, children and parents); *Sneed by McCullough v. Sneed,* 705 S.W.2d 392 (Tex. Ct.App.1986) (same). In Illinois, siblings can recover for the proven loss of society of a brother or sister under Illinois' wrongful death statute as long as they are legal next-of-kin. *In re Estate of Finley,* 151 Ill.2d 95, 103, 176 Ill.Dec. 1, 4, 601 N.E.2d 699, 702 (1992); *Woltering v. Outboard Marine Corp.,* 245 Ill.App.3d 684, 689, 185 Ill.Dec. 791, 794, 615 N.E.2d 86, 89 (5th Dist.1993), *appeal denied* 152 Ill.2d 582, 190 Ill.Dec. 912, 622 N.E.2d 1229 (1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). Although this Court has been unable to find any Indiana case directly on point, our research indicates that under Indiana law, only *dependent* siblings of the deceased may recover for wrongful death because the Indiana wrongful death statute entitles dependent next-of-kin to recover for loss of society, *see* IND.CODE ANN. § 34–1–1–2 (Burns 1993); *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 913 (Ind.Ct.App.1994), and, of course siblings may constitute next-of-kin.

---

**8.** The Texas actions are *Laroche,* No. 96–1021; *Robitaille,* 96–1022; *Bramley,* 96–1009; *Bonneau,* 96–1088; *Wright,* 96–1018; and *Begeny,* 96–1017. The Texas plaintiffs apparently misapprehended the scope of the Indiana plaintiffs' motion as one seeking the application of Indiana law to *all* plaintiffs in the consolidated actions before this Court as opposed to just the Indiana plaintiffs' actions. Additionally, the Texas plaintiffs' choice of law brief made no real effort to apply the doctrine of depecage and conduct its choice of law analysis with specific reference to the issue of compensatory damages.

In addition to the foregoing differences in the availability of compensatory damages under these states' wrongful death statutes, there is also a difference in the availability of a survival action. Under Indiana law, personal injury claims do not survive death unless the death is caused by factors other than those giving rise to the personal injury claim. IND.CODE ANN. § 34–1–1–1(d) (Burns 1993). Under the Texas and Illinois survival statutes, a decedent's personal representative may recover for pain and suffering experienced prior to death even where the mental anguish and death result from the same cause. See Yowell v. Piper Aircraft Corp., 703 S.W.2d 630, 634 (Tex.1986); Harrison v. Burlington N.R.R. Co., 750 F.Supp. 316, 318 (N.D.Ill.1990); In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 507 F.Supp. 21 (N.D.Ill.1980). Texas and Illinois law diverge, however, with respect to the type of pain and suffering for which a survival action may be brought. Under Illinois law, actionable mental anguish must be caused by bodily injury; accordingly, pre-impact fright and terror has been held to be non-actionable under Illinois law. In re Air Crash Disaster Near Chicago, 507 F.Supp. at 23. Texas law, on the other hand, does allow recovery for pre-impact terror. See Yowell v. Piper Aircraft Corp., 703 S.W.2d at 634.

Having determined that a true conflict regarding compensatory damages exists, the Court now proceeds to determine which of these conflicting laws will govern these plaintiffs' claims for compensatory damages. We begin by summarizing the contacts identified in § 145 of the Second Restatement.

(1) *The place where the injury occurred.*

■ There can be little genuine dispute that the decedents' injuries occurred in Indiana. Flight 4184 crashed near Roselawn, Indiana, and there is no evidence that the aircraft ever reached Illinois after departing from Indianapolis.[9] This Court is mindful of the fact that, in reaching choice of law determinations in air crash cases, several courts have observed that often the location of a plane crash is largely fortuitous and hence that location is not given its usual weight in the choice of law analysis. See, e.g., In re Air Crash Disaster Near Chicago, 644 F.2d at 615 ("air crash disasters often present situations where the place of injury is largely fortuitous"); Foster v. United States, 768 F.2d 1278, 1282 (11th Cir.1985) ("in aircraft accident cases the place of injury is almost always fortuitous and thus not entitled to its usual weight in the choice of laws decision"). As a general matter, this proposition is unquestionably sound. But, as with any rule, it must not be applied woodenly; rather, it should only be invoked under the appropriate facts. In most of the air crash cases articulating the "fortuity" rule, the flight at issue was scheduled to fly over several states and hence, in a very real sense, the accident may have occurred in any one of a number of states. Thus, for instance, in In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989, 781 F.Supp. 1307 (N.D.Ill.1991), the court noted, that Iowa's interests (the state of the crash) had not been accorded great weight because it was the site of "an entirely fortuitous, unforeseen emergency landing in Souix City" on a flight that was bound for Chicago from Denver. Similarly, in Foster, the subject flight, which crashed somewhere in Lake Michigan, originated in Florida and was bound for Wisconsin. 768 F.2d at 1279. And, in the Chicago air crash disaster case, the subject flight was bound for Los Angeles from Chicago, and in this regard the court remarked, "[t]hat the injury in our case occurred in Illinois can only be described as fortuitous. Had the DC–10's engine fallen off later, the injury might have occurred in one of any number of states." 644 F.2d at 615. In cases involving wholly intrastate air travel courts have rejected the fortuity argument. See, e.g., Price v. Litton Systems, Inc., 784 F.2d 600, 605 (5th Cir.1986) (rejecting the fortuity argument where the crash occurred in the state where the decedents

---

9. The Court finds plaintiffs' references to the fact that Flight 4184 was under the control of air traffic controllers operating in Aurora, Illinois to be beside the point in the context of the instant litigation. The manner in which federal air traf-fic controllers choose to partition air space has no bearing on the location of the decedents' injuries or the interests of the several states in this litigation.

were stationed and the flight was not scheduled to travel beyond state borders, noting "[t]his case, therefore, is unlike those cases involving ... air travel extending over several states where the accident occurs in some state other than the state of origin or the state of destination"). This case—involving as it does a flight from Indianapolis into an adjacent state—falls somewhere between the intrastate flight cases and the trans-national flight cases. To some extent, the fact that the accident occurred in Indiana can be seen as fortuitous; however, when it is understood that the overwhelming majority of Flight 4184's air time was in Indiana skies, the force of the fortuity argument is somewhat diminished. Thus, while the place of injury may not deserve the full presumptive force to which it is due, this Court will not entirely discount that factor.[10]

(2) *The place where the conduct causing the injury occurred.*

Defendants fail to provide the Court with any factual discussion of the place where the conduct causing the decedents' injuries occurred, arguing instead that such location(s) is irrelevant to the issue of compensatory damages. Although the Court ultimately agrees that the place where the conduct occurred is to be given little weight in the particular choice of law issue presently under consideration (*i.e.*, compensatory damages), we note the following. Each of the Indiana plaintiffs assert claims alleging, among other things: negligent aircraft operation, negligent training of the crew of the aircraft, product liability, and negligent aircraft manufacturing. Pls.' Resp. at 12–13. The Texas plaintiffs also indicate that claims against the ATR defendants include: failure to warn the Airline defendants of the hazards associated with the operation of the aircraft, negligent recommendation of the aircraft for use in icing and freezing rain conditions, and failure

to properly support and advise the Airline defendants of the limitations of the aircraft after the sale. Texas Pls.' Choice of Law Brief at 6. Although liability discovery has been stayed in this action pending completion of the NTSB investigation of the crash, based on available information, plaintiffs submit that: (1) the ATR aircraft carrying Flight 4184 was built in France; (2) the captain of the flight was an Illinois resident and the flight crew was based in Illinois; (3) the Airline defendants were all headquartered in Texas; (4) the captain of the flight was trained at the American Eagle Training Center in Ft. Worth, Texas; (5) the captain's most recent recurrent flight training took place at the American Eagle Center in Ft. Worth, Texas, and was administered by an employee of Simmons Airlines, Inc.; (6) the American Eagle Flight Manual and an Information Bulletin addressing operation of the aircraft in icing conditions were written by AMR Eagle, Inc. in Dallas/Ft. Worth; (7) the persons transmitting ACARS [Aircraft Communication Addressing and Reporting System] information to the Flight 4184 crew were dispatchers employed by Simmons Airlines, Inc., working out of Ft. Worth Texas. Also, plaintiffs contend that discovery will most likely reveal that a majority of the activity between the ATR defendants and the Airline defendants relating to the marketing, selection and purchase of the ATR–72 aircraft was centered in Texas. Finally, plaintiffs note that both American Airlines and Simmons have major hubs at O'Hare Airport in Chicago and state that Indiana's relationship to these airlines is "miniscule in comparison."

(3) *The domicile, residence, nationality, place of incorporation and place of business of the parties.*

The domicile (and residence) of all the decedents in the actions presently under con-

---

**10.** Plaintiffs argue that the fact that Flight 4184 crashed in Indiana, the state of origin, does not make the site of the crash any less fortuitous, stating "Defendants' reasoning contains a colossal flaw. Defendants have failed to recognize that 'the importance of the place of destination of a journey is just as great as the importance of the place of departure.' [*In re Air Crash Disaster Near Chicago*, 644 F.2d] at 612." The Court is not moved by this argument. In the first place, the Seventh Circuit's remark in the Chicago air

disaster case was made in the context of discussing the center of the parties' relationship, not the fortuity of the site of the crash. Second, the Court agrees that the place of destination is important, and, depending on the particular facts of the case, it is quite conceivable that a court would find the site of the crash to be less fortuitous (than in a trans-national flight where the crash occurs in a state unrelated to origin or destination) when the crash occurred in the destination state.

sideration is Indiana. All of these decedents' estates are being administered in Indiana and all of the personal representatives of the estates are Indiana residents. Also, virtually all of the beneficiaries are Indiana residents.

Simmons Airlines, Inc. is incorporated under the laws of Michigan. AMR Corporation and American Airlines are incorporated under the laws of Delaware. As previously noted, all of the Airline defendants' principal places of business are in Texas. ATR is created under the laws of France. ATR Support, Inc. is incorporated under the laws of Delaware and ATR Marketing, Inc. is incorporated under the laws of the District of Columbia. Virginia is the principal place of business of both ATR Marketing, Inc. and ATR Support, Inc.

(4) *The place where the relationship, if any, between the parties is centered.*

Any effort toward identifying a place where the relationship between the parties is centered is highly artificial. Certainly, it can hardly be said that the plaintiffs have any relationship with the ATR defendants; and, the center of the plaintiffs' relationship with the Airline defendants is "unclear" at best. *In re Air Crash Disaster Near Chicago,* 644 F.2d at 612. The Court is unpersuaded that the center of the relationship between the plaintiffs and the Airline defendants is centered in Texas simply because that is the location of these defendants' principal place of business. In short, there is no suggestion in the record that any of the plaintiffs' decedents had any dealings with the Airline defendants in Texas. The decedents in these cases were Indiana residents, flying out of Indianapolis. All bought their tickets through their respective employers: Messrs. Cunningham, MacDonald and Snyder bought their tickets through Delco, presumably in Indiana, and the tickets were issued through a General Motors travel agent in Michigan. They were bound for Brazil and were scheduled to return to Indiana. Similarly, Ms. Guba, an Indiana resident flying out of Indianapolis, was bound for Pittsburgh with a connection in Chicago (the parties are silent as to whether Ms. Guba intended to return to Indiana). She purchased her ticket through her Illinois employer and the ticket was issued by an Illinois travel agent. Ms. Ferryman, an Indiana resident flying out of Indianapolis, was bound for Chicago, her ticket was purchased through her employer, and was issued by a travel agent used by the employer in Illinois. It should be evident from these facts, that any determination as to the "center" of these decedents' relationship with the Airline defendants would be strained. As the Seventh Circuit has observed in discussing the center of the relationship between airline passengers and the airline, "the importance of the place of destination of a journey is just as great as the place of departure." *Id.* And, this Court does not place much weight on the location of the travel agent that booked the flight and issued the tickets. That location is both fortuitous and incidental to the parties' relationship. Thus, this Court finds that the "center" of the parties' relationship is indeterminate and the Court attaches little significance to this factor. *See In re Air Crash Disaster at Sioux City, Iowa,* 781 F.Supp. 1307, 1309 (noting that the parties' relationship was not centered in any particular state); *Bonn v. Puerto Rico Int'l Airlines, Inc.,* 518 F.2d 89, 91 (1st Cir.1975) (finding that the place where the relationship was centered in an air crash case did not weigh heavily).

### Most Significant Relationship

Having set out the foregoing contacts, we now address the issue of which state has the most significant relationship—with respect to the issue of the availability of compensatory damages through survival or wrongful death actions—to these plaintiffs' decedents' demise in the crash of Flight 4184. Although it should be abundantly clear by now, we emphasize once again the narrow issue we address and that the issue of which state's liability and/or punitive damage rules will apply is not before us. Contacts and interests must be evaluated with respect to the specific issue before the Court. *In re Air Crash Disaster Near Chicago,* 644 F.2d at 611; *Foster,* 768 F.2d at 1281.

We are persuaded that Indiana is the state with the most significant relationship to the issue of compensatory damages for the five plaintiffs involved in this decision.

In this regard, this Court believes that Indiana has the single greatest interest in determining and providing for the appropriate recovery for survivors and estates of Indiana decedents. In the context of finding that domiciliary states had no interest in imposing punitive damages in a multi-state air crash disaster, the Seventh Circuit characterized the interests of the domiciliary states as follows:

> The legitimate interests of [the domiciliary states], after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries.... Those interests are fully served by applying the law of the plaintiffs' domiciles as to issues involving the measure of *compensatory* damages (insofar as that law would enhance the plaintiffs' recovery) and the distribution of any award. Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the law of their domiciles, the interests of those states are satisfied.

*In re Air Crash Disaster Near Chicago*, 644 F.2d at 613. Explicit in these remarks, is a recognition of the domiciliary states' interest in having their laws apply to the issue of compensatory damages.[11]

Plaintiffs quote this same passage in support of their contention that Indiana's interests in full and fair compensation of its domiciliaries would be satisfied in this case if the Court applied the law of a different state that provided for greater or broader recovery. But this reading goes beyond the text. First, it is important to bear in mind that the Seventh Circuit was not deciding what law should govern the issue of compensatory damages; it was deciding the question of what law would govern punitive damages, and, it was in this context that the court explained that the domiciliary states' interests would be fully satisfied by applying those states' laws concerning compensatory damages. The court was surely not suggesting that some other state had any greater interest in the issue of compensatory damages than the domiciliary state. Second, we do not read the quoted language as attempting to articulate the general proposition that a domiciliary state's interest in compensatory damages is limited only to concerns about plaintiffs. As the recent flurry of "tort reform" legislation reflects, legislative determinations concerning the amount and avenues of compensatory damages reflect a balance between concerns for plaintiffs and concerns for limiting defendants' exposure to liability. By limiting the classes of plaintiffs who may recover for wrongful death, the Indiana legislature has decreased the liability exposure of corporate defendants doing business in Indiana. In theory, Indiana residents should benefit from a lower cost of goods and services resulting from this decrease in potential liability. Thus, notwithstanding *In re Air Crash Disaster Near Chicago*'s dicta, this Court is mindful that a domiciliary state's interest in applying its compensatory damages rules involve a careful balancing of concerns and is not limited solely to ensuring some level of minimum recovery for its domiciliaries.

As one commentator has observed:
> The choice of the law of the plaintiff's domicile is the most sensible solution to

---

11. Indeed, when a choice of law issue relating to compensatory damages was presented to the district court in the Chicago air crash case, the court strongly indicated that the state of the decedents' estates had the most significant relationship to the issue:

> Where, as here, the principal issue is damages in a wrongful death action, the domicile of the decedent and beneficiaries may also be important [in addition to the state where the injury occurred]. The domicile state has an interest in the litigation since it is concerned with the administration of the decedent's estate and with the provision of adequate compensation to the decedent's surviving relatives.

> As regards the majority of the present cases, it is clear that no state other than Illinois could have a more significant relationship to the occurrence or the parties. In [that majority of cases], the administrators or executors of the estates of air crash victims are citizens of Illinois and the estates are being administered in Illinois.

*In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 480 F.Supp. 1280, 1283 (N.D.Ill.1979) (citations omitted), *aff'd on other grounds*, 644 F.2d 633 (7th Cir.1981). Ultimately, however, the court did not have to decide the choice of law issue because the court found no conflict between the potentially applicable state laws.

conflicts concerning compensatory damages. The reason is that the plaintiff's state has the most significant interest in the compensation of its domiciliaries. It is inconceivable that a plaintiff's state's limits upon compensation can be said to constitute a desire to give its residents· less than complete compensation. Rather, such limits embody the state's policy not to unduly burden defendants, including corporations doing business within its borders. The defendant's state is clearly not as closely connected to compensation as the plaintiff's state. The defendant state has no interest in benefitting a foreign plaintiff with a more generous recovery than the plaintiff's own state permits.

John B. Austin, *A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation,* 58 J.Air L. & Com. 909, 962–63 (Summer 1993). This is especially true in today's international economy, which often results in millions of miles being logged by today's air passengers. Simply put, today's air travelers could be seen to have a relationship with numerous states in their air travel but their "most significant relationship" for compensatory damage purposes will usually be with their own state of domicile.

Just as the various defendants' states have little interest in plaintiffs' compensation, this Court also finds that Illinois, the forum state, does not have a substantial interest in plaintiffs' compensatory damages. Without question, Illinois, as a major hub for the Airline defendants, may have an interest in regulating the defendants' conduct. In plaintiffs' words, "Illinois has strong interests in promoting airline safety and deterring corporate misconduct relating to air safety." Pls.' Resp. at 7. However, that interest bears more heavily on the issue of liability standards and· punitive damages than the issue of compensatory damages. As the California Supreme Court has observed, "[l]imitations of ·damages for wrongful death ... have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated." *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 34–35, 432 P.2d 727, 730–31 (1967). It is apparent to this Court that Illinois' connections to this case relate most significantly to issues involving standards of conduct and deterrence of misconduct, not compensation of victims. This also holds true for the connections of Texas, the purported site of the majority of misconduct. As previously noted in this opinion, if and when this Court is called upon to decide the law applicable to liability and punitive damage issues, the interests of these two states will be freshly examined. However, because the precise legal issue before the Court at this time is not one involving the application of "conduct regulating" law, the Court finds Illinois and Texas' interests to be negligible.

Additionally, in *Gordon v. Eastern Air Lines, Inc.,* 391 F.Supp. 31 (S.D.N.Y.1975), the court reasoned that applying the law of the decedent's domicile to the issue of compensatory damages best served the needs of the interstate commerce system: "The failure to apply [the domicile state's] law in this case would 'impair the smooth working of the multi-state system [and] produce great uncertainty for litigants by sanctioning forum shopping ... thereby allowing a party to select a forum which could give him a larger recovery than the court of his own domicile.'" *Id.* at 34 (quoting *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70–71, 286 N.E.2d 454, 458 (1972)). We agree with this reasoning.

In the final analysis, the actions involved in the present motion involve Indiana domiciliaries who boarded a plane in Indiana and died when that plane crashed in Indiana. In view ·of all of the foregoing considerations, this Court concludes that Indiana has the most significant relationship to the issue of compensatory damages in these cases. While other states, particularly Texas and Illinois have some connections to and interests in the applicable law in this case, this Court finds that those connections and interests relate most significantly to issues not presently before the Court.

## CONCLUSION

Defendants' motion for a choice-of-law ruling applying Indiana law to the issue of compensatory damages is granted.