Robert McK. FOSTER, as Personal Representative of the Estates of Almon O. Thompson, Deceased, and Doris E. Thompson, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 84–5260.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

Daniel Donnelly, Crossfields, Garrison, N.Y., James Tribble, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Todd Cowart, Diane H. Hutt, Miami, Fla., for plaintiff-appellant.

David Hutchinson, Trial Atty., Civ. Div., Torts Branch, Washington, D.C., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges and WRIGHT *, Senior Circuit Judge.

CLARK, Circuit Judge:

## I. FACTS

Plaintiff-appellant is the personal representative of the Estates of Almon O. Thompson and Doris E. Thompson, a Florida couple, who were killed in a plane crash in Lake Michigan. At the time of their deaths they were on a journey from West Palm Beach, Florida, to Oshkosh, Wisconsin in a plane which was partially owned by Mr. Thompson, in order to attend the Experimental Aviation Association Annual Convention. Plaintiff-appellant, as the personal representative of the estate, filed this complaint alleging that the defendant-appellee, the United States, was negligent in providing air traffic control services to the Thompsons. The district court, applying the conflicts laws of the State of Illinois, (the place of the alleged misconduct), determined that the Florida wrongful death statute should be applied in this case. It was the plaintiff's position that the Illinois wrongful death statute should be used. In Florida, unlike Illinois, the representative of the decedents' estate may recover on behalf of non-minor children only if they are "partly or wholly dependent on the decedent for support." Fla.Stat.Ann. § 768.18.

A bench trial was conducted on the issue of dependency.[1] The court determined that the plaintiff-appellant had not met the burden of establishing that Beth Ann, the decedents' sole heir, was partly or wholly dependent upon the decedents' for support or services, and ruled that the defendant was entitled to judgment as a matter of law.[2] Plaintiff-appellant perfected the instant appeal raising the following issue: Whether the district court's conclusion, using Illinois conflicts of law principles, that the Florida Wrongful Death Act instead of the comparable Illinois provision should be applied in this case, was erroneous.

## II. THE LEGAL ISSUE IN CONTEXT

### A. *The Applicable Law*

Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C.

---

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. The issue of dependency was severed from the question of liability and proceedings on the issue of liability were stayed pending the outcome of the dependency issue which conceivably could be, and proved to be, dispositive.

2. The court stated:
   In sum, the facts recited above clearly do not support a claim of dependency under the Wrongful Death Act. While it is apparent that prior to their deaths Beth Ann's parents contributed funds and services that made her life a bit more comfortable, such money and services were not necessary for her sustenance.... But such contributions do not result in a dependency by an adult descendant on her parents where the parental assistance serves only to bolster an otherwise reasonable standard of living.

§§ 1346(b), 2671–80. Under this Act, the liability of the United States for an injury is to be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This includes the choice of laws doctrines of that jurisdiction. *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962). In this case, the Thompsons' aircraft was being controlled from the ground by air traffic controllers located in the Chicago Air Route Traffic Control Center. Neither side disputes, therefore, that the Illinois choice of law doctrines governs this case.

### 1. *Illinois' conflicts law*

The Illinois courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, (Restatement (Second)) to determine the applicable law in choice of law decisions. This test incorporates a presumption that the local law of the state where the injury occurred should govern unless another state has a "more significant relationship" to the occurrence or to the parties.[3] *Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485, 55 Ill.Dec. 375, 380, 426 N.E.2d 350, 355 (1981); *Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970). The Restatement provides a set of criteria that are to be used for the determination of the state with the "most significant relationship." This set of criteria includes a number of contacts to be taken into account in order to make the choice of law determination. These contacts are: (1) the place of the injury; (2) the place of the misconduct; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered.[4] The contacts are to be evaluated and weighed according to the relative importance to the issue involved and according to the purposes sought to be achieved by the relevant rules of the interested states. Rather than merely counting contacts, Illinois uses a "sophisticated 'interest analysis'" approach to conflicts problems. *Mitchell, supra*, 426 N.E.2d at 355. Thus, the application of choice of law rules is not a mechanical process of cranking various factors through a formula. Critical to any conflicts analysis is the notion that a court must examine the choice of law rules not with regard to various states' interest in general, but precisely with regard to each state's interest in the specific question involved. *See In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594 (7th Cir. 1981) (Using Illinois conflicts principles).

The Restatement (Second) assigns no particular weight or priority to the factors listed in § 145(2). The particular weight, therefore, given to any factor will vary from issue to issue as well as among different fact situations involving the same issue. *See* Scoles & Hay, *Conflict of Laws*

---

**3.** The Restatement (Second) § 175, § 178 (1971) provides as follows:

§ 175. Right of Action for Death. In an action for wrongful death the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied. § 178. Damages. The law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death.

**4.** The Restatement (Second) § 145 provides:
The General Principle
(1) the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 17.21, p. 588 (West 1982). Furthermore, it is not the state with the greatest number of contacts but with the most significant contacts whose law will govern as to that particular issue. *Leschkies v. Playboy Club of Lake Geneva, Inc.*, 465 F.Supp. 80, 82 (N.D.Ill.1979) (applying Illinois conflicts law). This case involves the application of Illinois conflicts law to determine whether Illinois' or Florida's wrongful death statute should apply.

**B.** *The Issue to be Decided*

**1.** *The different laws*

■ The precise issue in this case is whether the Illinois or Florida Wrongful Death Statute should be applied pursuant to the Illinois conflicts law. The question of which state's law regarding liability would apply is not before us.[5] Pursuant to the conflicts doctrine of "depecage," different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ. R. Leflar, *American Conflicts Law,* § 3.4 p. 72 (2d ed. 1980). However, in this case there is only one issue to be decided.

In this case the district court determined that:

> After careful consideration of all of the points and authorities cited and argued by counsel, the court has concluded that under the "most significant contacts" test provided by Illinois conflicts law, Florida law must govern this wrongful death action. *Manos v. Trans World Airlines Inc.*, 295 F.Supp. 1170 (N.D.Ill. 1969). The decedents were citizens of Florida, the sole heir currently resides in Florida, the decedents estate was probat-

ed in Florida, and any proceeds of this suit will be distributed here. *See id.* at 1173 n. 2.

The plaintiff-appellant argues that a review of the contacts previously enumerated in § 145 of the Restatement (Second) indicates that the Illinois statute and not the Florida Wrongful Death Act should have been used. The argument in its simplest form is that since the negligent conduct occurred in Illinois, and that Beth Ann, the decedents' sole beneficiary lived in Illinois at the time of the accident as well as the fact that the relationship between the Thompsons and Beth Ann was centered in Illinois, the Illinois statute should have been utilized. Thus, appellant maintains that the decision of the district court to use the Florida Wrongful Death Act should be reversed.

■ Under Florida's Wrongful Death Act, Fla.Stat.Ann. § 768.16–27 (West Supp. 1984), Beth Ann must be a survivor, as defined in § 768.18(1) to recover.[6] *See Capiello v. Goodnight,* 357 So.2d 225, 227 (Fla.Dist.Ct.App.1978), *appeal dismissed,* 365 So.2d 712 (Fla.1978); *Henderson v. Ins. Co. of North America,* 347 So.2d 690 (Fla.Dist.Ct.App.1977). As a "blood relative" she must show at least partial dependence "on the decedent for support or services," in order to be a "survivor." Fla. Stat.Ann. § 768.18(1) (West.Supp.1984). In contrast, Illinois provides a cause of action for the next of kin even where the only beneficiary is an adult married child who is not dependent on the decedent for support. Ill.Ann.Stat. ch. 3, § 11 (Smith-Hurd 1983); *Barrow v. Lence,* 17 Ill.App.2d 527, 151 N.E.2d 120 (1958).[7] Although the benefi-

---

**5.** As was noted previously, the district court severed the question of liability from the question of dependence. Since the district court determined the dependency issue adversely to the plaintiff the liability issue was never determined.

**6.** § 768.18(1) provides:

"Survivors" means the decedent's spouse, minor children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive

brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support.

**7.** The Illinois Wrongful Death Act provides in pertinent part:

Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recov-

ciary must show pecuniary loss in order to recover, a lineal descendant is presumed to suffer substantial pecuniary loss subject to rebuttal. *Fontanne v. Federal Paper Bd. Co., Inc.,* 105 Ill.App.3d 306, 61 Ill.Dec. 178, 434 N.E.2d 331 (1982).

### a. *the relevant policies*

The issue involved here is the definition of the class of beneficiaries in whose behalf a wrongful death action can be brought. There are two competing policies at work.

First, the broad purpose behind both acts is to shift the burden of loss from the decedent's survivors to the wrongdoer. *See* Fla.Stat.Ann. § 768.17; *Elliott v. Willis,* 89 Ill.App.3d 1144, 45 Ill.Dec. 287, 289, 412 N.E.2d 638, 640 (1980) ("purpose . . . is to compensate a family, as plaintiffs for the injury . . ."), *aff'd in part, rev'd in part on other grounds,* 92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163 (1982). Shifting the burden is aimed toward compensating victims and deterring tortious conduct. *See, e.g., Mitchell, supra,* 426 N.E.2d at 358; *Peoples Bank & Trust Co. v. Piper Aircraft Corp.,* 598 F.Supp. 377 (S.D.Fla. 1984).

Second, the class of beneficiaries is limited in order to protect defendants, i.e., by insuring that defendants need compensate only those suffering a loss. Florida does so by requiring dependency before an adult child can recover, while Illinois implements the same policy by requiring pecuniary loss.

Identifying the underlying policies, is particularly important when the policies of the interested states are basically the same. *Mitchell, supra,* 426 N.E.2d at 357. The comments to section 6 of the Restatement (Second) state that the basic policies underlying the particular issue "is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless

minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of the state which will best achieve the basic policy, or policies, underlying the particular field of law involved."

Thus, in order to properly address the issue before us an application of the factors as set forth in the Restatement (Second) § 145 as applied to the policies as well as the facts relevant to this case is in order.

### 2. *The Restatement (Second) Contacts*

### a. *the place of injury*

The first contact enunciated in the Restatement (Second) is the place where the injury occurred. Under Illinois conflicts laws, the local law of the place of injury should govern unless another state has a more significant relationship to the occurrence or to the parties. *Ingersoll, supra,* 262 N.E.2d at 596. It is not disputed that the injury in this case occurred in Wisconsin. However, as several courts have noted, in aircraft accident cases the place of the injury is almost always fortuitous and thus is not entitled to its usual weight in the choice of laws decision. *Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524, 528 (7th Cir.1981); *In re Air Crash Disaster,* 644 F.2d at 615; *see also Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). Neither party urges the application of Wisconsin law.

### b. *the place of misconduct*

The second contact to be considered is the place where the conduct causing the injury occurred. There is no dispute that the alleged misconduct occurred in Illinois, where the air traffic controllers were located. Additionally, because the place of injury in such a case is fortuitous, the place of the alleged misconduct takes on greater

---

ered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just

compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person. Ill.Ann.Stat. ch. 70, § 2 (Smith-Hurd 1983).

significance. *See* Restatement (Second) § 145(2) comment (e).[8] Illinois, obviously has an interest in deterring tortious conduct in Illinois as well as in compensating the injured party. *See* Weintraub, *supra*, § 6.10 p. 287–88. Florida has little interest in deterring tortious conduct occurring in Illinois.

### c. *domicile of the parties*

The third contact to be considered is the domicile, residence, etc. of the parties. There is no dispute that the Thompsons were Florida residents. At the time of the accident, Beth Ann was a resident of Illinois. She subsequently moved to Florida. However, Mr. Foster, the personal representative of the estate and the named plaintiff in this suit, is a Florida resident. Furthermore, his authority as the personal representative of the Florida estate of the Thompsons arises out of Florida law. Wrongful death cases are required to be brought in the name of the personal representative of the estate. Both appellant and appellee argue strenuously about who the relevant parties are and when domicile should be determined. The district court considered both Beth Ann and the personal representative. Appellee maintains that only the personal representative should be considered. Appellant maintains that Beth Ann is the real party in interest and that her domicile at the time of her parent's death, Illinois, is the relevant contact.

■ The most reasonable approach is to consider all factors, weighing each in light of the interests involved. *See, e.g., Manos v. Trans World Airlines, Inc.*, 295 F.Supp. 1170, 1173 n. 2 (N.D.Ill.1969). Choice of law principles should neither penalize a plaintiff for making an otherwise advantageous move nor award forum shopping. *See, e.g.,* Weintraub, *supra*, § 6.28; *see also Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 34, 432 P.2d 727, 730 (1967)

(per se rule determines domicile at time of accident).

■ Even if all plaintiffs are considered Florida residents, Florida has little interest in applying its law to this particular issue. Limiting potential beneficiaries limits recovery. The only purpose is to protect defendants. When there is no domiciliary defendant, this interest should be discounted. Thus, a limit on recovery should not be applied when there is no domiciliary defendant because it advances no policy behind the limitation. Weintraub, *supra*, § 6.10 p. 288.

■ However, Illinois, Beth Ann's former residence, and her residence at the time of the accident,[9] has a strong interest in applying its law to insure that she is compensated for her loss. *See Peoples Bank & Trust*, 598 F.Supp. at 377 ("ability of the deceased and his beneficiaries to be compensated for their injuries" is important attribute of state citizenship); *see also* Weintraub, *supra*, § 6.13 (domicile of plaintiff has interest in making sure plaintiff received compensation home state regards as appropriate); *Reich v. Purcell, supra*, (same conclusion using interest analysis approach to conflicts decisions).

### d. *the center of the relationship*

■ The last contact to be considered is the place that the relationship, if any, between the parties was centered. Appellee, the United States, argues that the relationship has no center, focusing its analysis on the Thompsons' entire involvement with the FAA throughout the flight. Appellant maintains that the relationship between the Thompsons and the FAA was centered in Illinois at the Chicago Air Route Traffic Control Center at Aurora. We conclude that the relationship at the time of the accident was centered in Illinois. The decedents' aircraft was flying through airspace

---

**8.** However, when the relevant issue is primarily concerned with protecting defendants as the limitation on potential is here, the place of misconduct becomes less important. Restatement (Second) § 145(2), comment d.

**9.** Under both Florida and Illinois law, a cause of action for wrongful death accrues at the time of decedent's death. *Walker v. Beech Aircraft Corp.*, 320 So.2d 418, 420 (Fla.Dist.Ct.App.1975); *Mitchell, supra*, 426 N.E.2d at 354.

controlled by the Chicago Center under an instrument plan approved by the Chicago Center. Clearances and instructions were issued to decedents' aircraft from there and the decedents were in communication with the center at the time of the crash.[10] Since the center of the relationship is important only if "the injury was caused by an act done in the course of the relationship," the relationship should be narrowly defined. Restatement (Second) comment (e), p. 421.

### C. The Choice of Law Decision

■ The question now to be resolved is whether the State of Illinois or the State of Florida has the most significant contacts to the parties in the case in light of the issue to be decided. We believe that Illinois does. The alleged misconduct occurred in Illinois. Although the named parties were Florida residents, Beth Ann, the only lineal descendant, was a resident of Illinois at the time of the accident. The defendant in this case, the United States is obviously a domiciliary of neither. Admittedly, it is a Florida estate, to be probated there and any recovery would take place in Florida. However, the relationship of the parties was centered in Illinois.

The district court found *Manos v. Trans World Airlines, Inc., supra* instructive. In *Manos*, also an airline crash case, the district court had to make a choice of law decision regarding damages. In making its determination, the district court in *Manos*

looked at the residence of the decedents, the residence of the heir, the residence of the administrator of the estate as well as where the estate was to be probated. The primary factors the district court considered, however, were the residence of the decedents and where the estate was to be probated. *See Manos, supra,* 295 F.Supp. at 1173–74 n. 2.[11]

We agree that these are relevant considerations. However, we believe that in this case Illinois' interest in deterring tortious conduct in Illinois and in compensating its citizen (Beth Ann) is greater than Florida's interest in limiting recovery.[12] Especially where as here, neither the defendant nor the sole heir were Florida residents, the difference in the conflicting provisions is not that great and the competing policies are essentially the same. Thus, we conclude that using Illinois' most significant relationship test, the district court erred in choosing the Florida Wrongful Death Statute. Therefore, the decision of the district court is

REVERSED and REMANDED.

---

10. By determining that the relationship was centered in Illinois, we do not intend to adopt a special policy defining the center of the relationship in air crash cases. Rather, regardless of the fact that this alleged tort involved an airplane crash, looking at the facts in this case as they relate to the parties, we determine that the relationship was centered in Illinois.

11. However, in only one of the choice of law decisions was the court clearly faced with a situation involving a split in domicile between the decedent and the heir(s). In that case the decedent was a resident of Canada but the heirs were all residents of Greece. It was not clear where the estate was to be probated. The court, assuming that the estate would be probated in Canada stated, "[e]ven given those facts, it is not

clear that Greece would not still be the country whose law would apply." 295 F.Supp. at 1174 n. 2. Thus, we believe that *Manos* supports the conclusion that we reach.

12. Other evidence of Florida's lesser interest is demonstrated by the fact that the Florida statute has since been amended. The statute no longer requires a demonstration of dependency for children of the decedent under 25. Beth Ann was 23 when her parents died. 1981 Fla.Laws c. 81–183, §§ 1, 3; Fla.Stat.Ann. § 768.18(2). The amendment was not retroactive but it does indicate Florida's lesser interest in the choice of law decision. It is highly unlikely that the Illinois conflicts law would implement a discarded Florida provision as applied to an Illinois domiciliary.