[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10023

_____

D.C. Docket No. 5:11-cv-00163-RBD-TBS

DENISE SCHIPPERS,
SHARON COX-ESTEP,

Plaintiffs – Appellants,

versus

UNITED STATES OF AMERICA

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 3, 2013)

Before WILSON and COX, Circuit Judges, and VINSON,[*] District Judge.

VINSON, District Judge:

As succinctly noted by counsel at the beginning of oral argument: "This is a

case about a plane crash in Texas and what law should control." After undertaking

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

a choice-of-law analysis, the District Court for the Middle District of Florida held that the law of Florida should control, and it dismissed the complaint by Denise Schippers and Sharon Cox-Estep on the ground that they lacked capacity to bring the action under Florida law. Upon review, and with the benefit of oral argument, we reverse.

I.

On October 26, 2009, a private twin-engine Beechcraft King Air aircraft took off from Uvalde, Texas, with an intended destination of Leesburg, Florida. The pilot, Paul Mazak, and his passengers, Richard Schippers, Shane Schippers (Richard's adult son), and Malcolm A. Lavender, all of whom were residents of Florida, were returning home from a hunting trip at Mazak's 8,000-acre Texas ranch.[1] Once the plane was airborne, Mazak received vector instructions from an air traffic control employee at the Federal Aviation Administration ("FAA") Air Traffic Control Center located in Houston, Texas ("Houston Center"). After receiving the instructions, Mazak flew the plane into a thunderstorm and it crashed shortly thereafter near Benavides, Texas, killing all four of the occupants.

Reba Mazak, Christina Schippers, and Heidi Schippers, all of whom reside in Florida, were appointed Personal Representatives of the Estates of Paul Mazak,

---

[1] Mazak was the president of Mazak Properties, Inc., which owned the aircraft and ran a cattle operation on the ranch. He made more than 30 trips from his home in Florida to Texas for the purposes of overseeing the cattle operation and, as on this occasion, hunting on the ranch.

2

Richard Schippers, and Shane Schippers, respectively, and they brought separate wrongful death actions against the United States in the Middle District of Florida under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq. ("FTCA"), and the Florida Wrongful Death Act, Fla. Stat. §§ 768.16, et seq. ("Florida Act").[2] Meanwhile, Denise Schippers (Richard's adult daughter) and Sharon Cox-Estep (Shane's mother) (together, the "appellants"), both of whom also reside in Florida, but are excluded from those entitled to file a claim under the Florida Act[3], brought a wrongful death action against the United States in the Southern District of Texas under the FTCA and the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code §§ 71.001, et seq. ("Texas Act"). The FTCA provides that the United States may be held liable for damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The complaints alleged, in general, that the air traffic control employee in the Houston Center was negligent in giving Mazak the instructions and that the FAA failed to train and supervise him. The appellants' case was transferred from Texas to the

---

[2] The Personal Representative of the Estate of Malcolm A. Lavender did not file suit and is not at issue in this appeal.

[3] Fla. Stat. § 768.20 (providing that wrongful death actions in Florida must be filed by the decedent's personal representatives on behalf of statutorily-defined "survivors").

Middle District of Florida and consolidated with the other cases "for purposes of discovery and all other pretrial matters . . . ."

In May 2011, the United States moved to dismiss the appellants' complaint under Rule 17(b) of the Federal Rules of Civil Procedure. The government argued that, pursuant to Section 768.20 of the Florida Act, the appellants lacked capacity to bring suit as they were not the personal representatives of the decedents' estates. See Fed. R. Civ. P. 17(b)(1) (providing that capacity for individuals bringing suit on their own behalf is to be determined "by the law of the individual's domicile"). The appellants opposed the government's motion to dismiss and moved separately for the district court to apply the law of Texas to liability and damages. Under the Texas Act, Sharon Cox-Estep, as a surviving parent, and Denise Schippers, as a surviving adult child, were entitled to file suit and recover damages on their own behalf, whereas under Florida law they were not.

The district court issued a decision on these motions by written order dated November 29, 2011. After engaging in a lengthy choice-of-law analysis, the court ultimately concluded that the State of Florida had the most significant relationship to the consolidated cases, and, therefore, "Florida law shall apply as to all issues." The court thus denied the appellants' motion to apply the law of Texas to the case. Because Florida law provides that only the personal representative of an estate may pursue a wrongful death action on behalf of the survivors, the district court further

4

granted the government's motion to dismiss as the appellants "lack capacity to sue for wrongful death under the law of their domicile, Florida. See Fed. R. Civ. P. 17(b)(1)."

The appellants now appeal the November 29th order, arguing that the district court erred in applying the law of Florida to their complaint. The government urges affirmance on the ground that it is not necessary to reach and decide the choice-of-law question because the appellants lack capacity to bring the action under Rule 17 in the first instance. If the choice-of-law issue needs to be decided, the government maintains that Texas law should apply to liability while Florida law should apply to damages.[4] Reba Mazak filed a separate brief as appellee, arguing, inter alia, that the district court correctly held that the law of Florida (both liability and damages) should apply to the appellants' complaint. During the pendency of this appeal, the United States settled with all the plaintiffs --- except for the appellants --- and each of the other consolidated actions has been dismissed by the district court.

## II.

We will review a choice-of-law question and dismissal for lack of capacity de novo. Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009) ("[W]e review choice of law questions de novo."); Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1307 (Fed. Cir. 2003) ("This court reviews questions of

---

[4] To that limited extent, the United States contends that the district court erred in ruling that Florida law should apply "as to all issues."

law, including standing and capacity to sue under [Rule 17], without deference.").

III.

As a preliminary matter, we must say a brief word about our jurisdiction to consider this appeal.

Title 28, United States Code, Section 1291 provides that the courts of appeal have jurisdiction to consider "final decisions" of the district courts. Rule 54(b) of the Federal Rules of Civil Procedure provides that when there are multiple parties in an action, an order or decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not a "final decision" (or final order) for appellate purposes. See Fed. R. Civ. P. 54(b); see also Hill v. BellSouth Telecommunications, Inc., 364 F.3d 1308, 1313-14 (11th Cir. 2004) (stating that an order finally disposing of some, but not all, of the claims for relief in an action does not terminate the action in the district court "and is not appealable as a final order pursuant to 28 U.S.C. § 1291"). A question has been raised in this case as to whether the November 29th order was a "final order" for purposes of Section 1291 because, although the order dismissed the appellants' complaint, the consolidated cases continued in the district court --- at least for a period of time --- with respect to the other three (personal representative) plaintiffs.[5]

---

[5] The United States does not challenge our jurisdiction to consider this appeal. To the contrary, it has conceded that "[t]his Court's jurisdiction is proper pursuant to 28 U.S.C. § 1291." The jurisdictional argument was instead raised by Reba Mazak in her brief. Even though Mazak

We are satisfied that we have jurisdiction for two reasons. First, while it is true that when two or more cases are consolidated "for all purposes" each case must be final in order for any of them to be appealed, Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1356 (11th Cir. 2002), that correct statement of law is not relevant on the facts here as the district court did not consolidate the cases "for all purposes"; rather, the cases were consolidated for pre-trial and discovery purposes. In this context --- where cases are consolidated for limited pre-trial purposes --- we have held that an order dismissing one of the cases is "final and appealable, subject to this Court's appellate jurisdiction under 28 U.S.C. § 1291." Lewis Charters, Inc. v. Huckins Yacht Corp., 871 F.2d 1046, 1049 (11th Cir. 1989); see also King v. Cessna Aircraft Co., 562 F.3d 1374, 1378 (11th Cir. 2009) ("The district court did not consolidate the European Plaintiffs' case with the King Plaintiffs' case for all purposes, so the European Plaintiffs can appeal the dismissal of their case without waiting for a final determination of the King Plaintiffs' case.").

Moreover, even if there is uncertainty as to whether the consolidation order was, in fact, limited to discovery and pre-trial matters (or whether it was "for all

settled with the United States and was dismissed from this appeal prior to the oral argument, we need to ensure that we have subject matter jurisdiction under the facts of this case. See Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 584-85 (11th Cir. 1987); see also Federal Deposit Ins. Corp. v. Dye, 642 F.2d 833, 834 (5th Cir. 1981) (declining to rule "for want of subject matter jurisdiction" where the issues raised "are not final orders") (binding under Bonner v. Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc)).

7

purposes"), the point is now moot given that the consolidated plaintiffs --- other than appellants --- have settled with, and dismissed their claims against, the United States. Consequently, any jurisdictional defect that may have arguably existed when this appeal was first filed has since been "cured." See Martin v. Campbell, 692 F.2d 112, 114 (11th Cir. 1982) ("[T]here is an exception to the requirements of Rule 54(b) that allows the separate appeal of a non-final judgment where a subsequent judgment of the district court effectively terminates the litigation.").

Having established our jurisdiction over this appeal, we will now consider the merits. Three distinct and, in some respects, novel questions are raised. First, does Rule 17 of the Federal Rules of Civil Procedure control capacity to sue in a FTCA case? Second, if Rule 17 does not apply, what weight should the plaintiffs' domicile be given in the choice-of-laws analysis? Related to, and included in, the second question is whether the doctrine of depecage should enter into the analysis.

## IV.

As previously noted, the appellants contend that the district court erred in applying Florida law to their complaint, and that a proper choice-of-law analysis establishes that Texas law should control. The United States responds by arguing that it is not necessary for us to reach the choice-of-law issue because, under Rule 17(b), "appellants lack the personal qualifications to litigate their wrongful death action under the law of the state of their domicile, Florida." Insofar as a challenge

8

to capacity under Rule 17 is a threshold issue that should be resolved prior to, and independent of, a choice-of-law analysis, the government asserts that we need not consider the issue. We agree with the United States --- at least to the extent that if Rule 17 applies (regardless of any choice-of-law analysis), then the appellants lack capacity and "[t]hat should be the end of the matter."[6]

The general application of Rule 17 is relatively plain and straightforward. The rule provides that, for an individual not acting in a representative capacity, capacity to sue or be sued is decided "by the law of the individual's domicile[.]" Fed. R. Civ. P. 17(b)(1). It clearly applies to actions involving private parties or entities, as reflected in the cases cited by the government. See, e.g., Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir. 1992); Jacobs v. Adams, 601 F.2d 176, 178 (5th Cir. 1979); Pantano v. United Medical Labs., Inc., 456 F.2d 1248, 1249 (9th

---

[6] The appellants maintain that the government is judicially estopped from making this argument as it had once "taken the exact opposite position" in an earlier and unrelated district court case. See Luz M. Gonzalez Jiminez de Ruiz v. United States, Case 5:00-cv-00371-WTH (M.D. Fla.). They claim that in this earlier litigation the United States invited the district court to undertake the choice-of-law analysis first, and only then reach the question of capacity under that state's law. See generally Memorandum in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment, Case 5:00-cv-00371-WTH, Document 34, at 1-14. Even if it is granted that the United States took "the exact opposite position" in the earlier case (which it expressly denies), judicial estoppel would not prevent the government from advancing its current position since the appellants were not a party to that case. See Colonial Refrigerated Transp., Inc. v. Mitchell, 403 F.2d 541, 550 (5th Cir. 1968) (explaining that judicial estoppel, like all estoppel, "is equitable in nature, and is designed to protect those who are misled by a change in position"; therefore, it "may be invoked only by a party to the prior litigation or someone privy to a party") (binding under Bonner, 661 F.2d at 1206); accord, e.g., Nichols v. Scott, 69 F.3d 1255, 1272 n.33 (5th Cir. 1995) (collecting and citing the "considerable authority that judicial estoppel does not apply in favor of one who was not a party to the prior proceeding in which the inconsistent position was taken"). Consequently, we will consider the government's argument that we do not have to reach the choice-of-law issue because Rule 17 resolves this appeal.

Cir. 1972); Danos v. Waterford Oil Co., 266 F.2d 76, 77-78 & n.2 (5th Cir. 1959);

see also Masood v. Saleemi (No. 07-35637, Jan. 20, 2009, 9th Cir.) (unpublished

opinion). But where, as here, the United States is the defendant, and the lawsuit is

brought under the FTCA, a different result obtains. As we observed in Gonzalez-

Jiminez de Ruiz v. United States, 378 F.3d 1229 (11th Cir. 2004):

> Because the United States is the defendant, this suit is
> being brought under the Federal Tort Claims Act, 28
> U.S.C. § 1346, which requires that the "whole law of the
> State where the act or omission occurred[,]" including its
> choice of law rules, be applied. Richards v. United States,
> 369 U.S. 1, 11, 82 S. Ct. 585, 592, 7 L. Ed. 2d 492
> (1962). The district court correctly found that because the
> wrongful acts alleged occurred in Florida, Florida law ---
> including Florida choice of law rules --- governs this
> action.
>
> Under Florida's choice of law provisions, Florida law
> governs all substantive issues, including the question of
> whether an individual has standing and capacity to sue.

Id. at 1230 n.1 (emphasis supplied). Thus, it is the law of this circuit that, when

faced with a standing and capacity question in a FTCA case, the court must first

look to the law of the state where the act or omission occurred --- not the law of the

plaintiff's domicile under Rule 17 --- to determine both the plaintiff's standing and

capacity to sue.

The United States acknowledges, as it must, the above-quoted language in

Gonzalez Jiminez de Ruiz, which plainly says that the FTCA requires that both

standing and capacity be determined under the law of the state where the act or

10

omission took place, but it contends that the emphasized portion of that opinion was "likely inadvertent." It intimates that the panel there may have mistakenly considered capacity and standing to be one and the same, even though they are "distinct legal concepts." Even if it is assumed that we could effectively excise allegedly "inadvertent" language from binding precedent without violating our prior panel rule[7], we do not agree with the United States that the language was unintended.

Preliminarily, we note that the language used in Gonzalez Jiminez de Ruiz that the United States is now suggesting was probably confused and "inadvertent" is the same language that the government used in its brief in that case. See Brief of United States of America, Appeal No. 03-10274-BB, at 41, 45-46 (arguing that the plaintiff there "lacks standing and capacity" to assert her claim; explaining that the law where the act or omission took place controlled "standing and capacity" under the FTCA, as the liability of the United States must be determined "'in accordance with the law of the place where the act or omission occurred'") (quoting 28 U.S.C. § 1346(b)). While the United States is not judicially estopped from advancing a position in one case and then advancing the opposite position in a later case with different parties [see note 6 supra], it is perhaps disingenuous for the government

---

[7] "Under the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997).

11

to suggest that a prior panel of this court may have been confused when it adopted the same position (and, indeed, used the same general language) that the United States had put forth in that case.

Further, not only is the language in footnote 1 of Gonzalez Jiminez de Ruiz clear and unambiguous (and based on an argument the United States made), but it is in line with case law from other courts which holds that, in the FTCA context, capacity to sue is indeed governed by the law where the act or omission (or injury) occurred. See Olson v. United States, 175 F.2d 510, 512 (8th Cir. 1949) (stating that "the standards and tests of the state where the accident occurred controlled on questions of negligence and the nature and extent of recovery including the capacity and rights of the plaintiff and the liability of the United States"); see also, e.g., McSwain v. United States, 291 F. Supp. 386, 388 n.2 (E.D. Pa. 1968) ("capacity of parties to sue under the [FTCA] is governed by the law of the state where the accident occurred"); Buchheit v. United Air Lines Inc., 202 F. Supp. 811, 814 (S.D.N.Y. 1962) (accepting as "correct" the plaintiffs' claim "that the capacity of parties to sue under the [FTCA] is governed by the law of the state where the injury occurred"); Kunkel v. United States, 140 F. Supp. 591, 593 (S.D. Cal. 1956) (stating that a court in a FTCA case should refer to the law where the challenged act or omission took place to determine, inter alia, "who is entitled to maintain the action"); Rushford v. United States, 92 F. Supp. 874, 878 (N.D.N.Y.

12

1950) (explaining that "capacity and rights of the plaintiff and the liability of the United States" in a FTCA case are determined by local law), aff'd 204 F.2d 831 (2d Cir. 1953).[8]

We also believe there is a sound and reasonable rationale underlying these decisions involving standing and capacity to sue in FTCA cases. The United States has waived its sovereign immunity with respect to claims under the FTCA and has expressly set out that the law of the state "where the act or omission occurred" will control. This is obviously intended to provide uniformity of treatment to all claims arising from the complained-of act or omission. That uniformity disappears if each claimant's capacity is determined by domicile. All one has to do is to merely think about what would happen if the aircraft in this case had been a Boeing 747, with several hundred passengers from dozens of states and foreign countries. Applying Rule 17(b) to determine capacity to bring suit could result in widely differing and perhaps inconsistent results for similarly-situated claimants in different domiciles.

---

[8] The United States contends that these cases cannot be read to support the position that Rule 17 is inapplicable to FTCA actions because these cases --- including Gonzalez Jiminez de Ruiz --- "do not discuss or even cite Rule 17(b)." We agree with appellants that this is exactly the point: Rule 17 was most likely not discussed in these cases because it simply does not apply in the FTCA context. Under the FTCA, the applicable law is the "'whole law of the State where the act or omission occurred[,]'" 378 F.3d 1229, 1230 n.1 (11th Cir. 2004) (quoting Richards v. United States, 369 U.S. 1, 11, 82 S. Ct. 585, 592, 7 L. Ed. 2d 492 (1962)), and not the law of the plaintiffs' domicile under Rule 17. Once again, we note that our conclusion here is generally the same position that the United States advanced on appeal in Gonzalez Jiminez de Ruiz. See Brief of United States of America, Appeal No. 03-10274-BB, at 41, 45-46 (arguing to this court that the law of the state where the act or omission took place determined "standing and capacity" in that FTCA case as the liability of the government is decided "'in accordance with the law of the place where the act or omission occurred'") (quoting 28 U.S.C. § 1346(b)).

13

In sum, we hold that Rule 17 does not apply to this FTCA case, and it does not preclude the appellants from bringing a FTCA claim against the government. Rather, the question of their capacity to sue the United States is, under our binding decision in <u>Gonzalez Jiminez de Ruiz</u>, subsumed within the choice-of-law analysis that we will now undertake.

V.

We begin here by identifying several points on which there is no dispute, as it will help narrow and streamline the issues for consideration. First, the appellants and the United States agree (as do we) that because the alleged negligence at issue took place in Texas, Texas choice-of-law principles apply. <u>See</u> <u>generally</u> <u>Richards</u>, 369 U.S. at 10-15; <u>see</u> <u>also</u> 28 U.S.C. § 1346(b)(1). The parties further agree (once again, as do we) that in conducting the choice-of-law analysis, Texas courts use the "most significant relationship test" set out in the <u>Restatement (Second) of Conflicts of Laws</u> ("Restatement"), under which the court will apply the law of the state with "the most significant relationship to the occurrence and the parties[.]" Restatement § 145(1); <u>see</u> <u>also</u> <u>Torrington Co. v. Stutzman</u>, 46 S.W.3d 829, 848 (Tex. 2000). In determining which state has the most significant relationship, Texas courts look to: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any,

between the parties is centered.'" Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979) (quoting Restatement § 145(2)(a)-(d)).

The parties are in agreement that three of the four Restatement factors point to Texas, to wit: the plane crashed in Texas (factor a); the alleged negligence took place at the Houston Center (factor b); and the relationship between the parties is centered in Texas (factor d). Therefore, as the United States has conceded, "Florida has no meaningful contacts under these three factors" and Texas law should govern the liability issues in this case. Where the government and the appellants part ways is at the third Restatement factor (domicile and residence of the parties), which the United States believes points to Florida and warrants the application of Florida law to damages.

This concept of applying the law of one state to one issue (liability) while applying the law of another state to another issue (damages) is known as depecage. See Willis L. M. Reese, Depecage: A Common Phenomenon in Choice of Law, 73 Colum. L. Rev. 58 (1973). Although the doctrine is "clearly appropriate" in certain situations, see id. at 60, it is "inappropriate when used to fragment issues related to a common purpose or to legitimatize a smorgasbord approach which inures only to the benefit of the party picking and choosing." See Johnson v. Continental Airlines Corp., 964 F.2d 1059, 1064 (10th Cir. 1992).[9] It is not entirely clear if depecage is

---

[9] The attempted use of depecage to "legitimatize a smorgasbord approach" of "picking

allowed under Texas law. See Georgetown Assocs., Ltd. v. Home Federal Sav. & Loan Assoc., 795 S.W.2d 252, 254 n.1 (Tex. App. 1990) (noting "the theoretical possibility of what the writers call depecage", but "express[ing] no opinion on the existence or validity" of such an approach). Assuming, arguendo, that depecage is permitted under the law of Texas, it is not appropriate on the facts of this case, for the reasons to be discussed below.

According to the United States, application of the Restatement's third factor regarding domicile controls the determination of which state's law should apply to damages --- even though it may be different from the state whose laws determine liability. Because all the decedents were domiciled in Florida, the argument goes, and because all the plaintiffs live in the state, Florida law should govern damages since Florida has the "greater interest" in ensuring that its residents are adequately compensated. The problem for the United States, however, is that, on the facts of this case, its argument is directly foreclosed by this court's decision in Foster v. United States, 768 F.2d 1278 (11th Cir. 1985).

Foster was a wrongful death case arising out of a plane crash in Wisconsin (Lake Michigan) in which a Florida couple, Almon and Doris Thompson, died. The personal representative of their estate, Robert Foster, a Florida resident, filed a FTCA action against the United States in the Southern District of Florida, alleging

_____

and choosing" seems to be an appropriate criticism in this case for it is outcome-determinative.

16

that FAA personnel in Illinois negligently provided the decedents with air traffic control services as they traveled through airspace controlled by the Chicago Air Traffic Control Center. The Thompsons' sole heir was their adult daughter Beth Ann, who, at the time of the plane crash, was living in Illinois (although she subsequently relocated to Florida). After undertaking the choice-of-law analysis, the district court held that Florida law should apply to the case. Under Florida law (unlike Illinois law), a personal representative of an estate could recover on behalf of an adult child only if that child was partly or wholly dependent on the decedent for support. Because Beth Ann was not dependent on the Thompsons for support, the district court entered judgment in favor of the United States as a matter of law. The personal representative appealed to this court, arguing that the district court erred in applying Florida law instead of the law of Illinois.

We began by analyzing Illinois' choice of law test, which, like Texas, uses the "most significant relationship test" enunciated in Restatement § 145 and looks to the four factors provided therein. Notably, the parties in <u>Foster</u> advanced almost the same arguments that have been made in this case. The plaintiff argued there, as appellants do here, that the law of the state where the negligence occurred, Illinois, should apply to the case as it was "the place where the conduct causing the injury occurred" and "the place where the relationship, if any, between the parties is centered." The United States, meanwhile, argued in favor of Florida law because,

17

as in this case, the decedents were citizens of Florida, the personal representative

resided in Florida, the estate was probated in Florida, and because any proceeds

from the lawsuit would be distributed in Florida. We agreed with the plaintiff that

the place of the alleged negligence and center of the parties' relationship pointed to

Illinois.[10] As for the third Restatement factor regarding the domicile of the parties,

we explained:

> There is no dispute that the Thompsons were Florida residents. At the time of the accident, Beth Ann was a resident of Illinois. She subsequently moved to Florida. However, Mr. Foster, the personal representative of the estate and the named plaintiff in this suit, is a Florida resident. Furthermore, his authority as the personal representative of the Florida estate of the Thompsons arises out of Florida law. Wrongful death cases are required to be brought in the name of the personal representative of the estate. Both appellant and appellee argue strenuously about who the relevant parties are and when domicile should be determined. The district court considered both Beth Ann and the personal representative. Appellee maintains that only the personal representative should be considered. Appellant maintains that Beth Ann is the real party in interest and that her domicile at the time of her parent's death, Illinois, is the relevant contact.

Id. at 1283. The Foster court went on to conclude that, for purposes of this analysis

and because the United States was a non-domiciliary defendant, it mattered little

---

[10] Insofar as the location of injury in an airplane crash case is "almost always fortuitous," the court further noted that the Restatement's first consideration of "the place where the injury occurred" was not a significant factor in that case because the crash occurred in Wisconsin and "[n]either party urges the application of Wisconsin law." Foster v. United States, 768 F.2d 1278, 1282 (11th Cir. 1985).

18

where "the relevant party" resided. In reversing the district court and determining

that Illinois law should have been applied to the case, we held:

> Even if all plaintiffs are considered Florida residents,
> Florida has little interest in applying its law to this
> particular issue. Limiting potential beneficiaries limits
> recovery. The only purpose is to protect defendants.
> When there is no domiciliary defendant, this interest
> should be discounted. Thus, a limit on recovery should
> not be applied when there is no domiciliary defendant
> because it advances no policy behind the limitation.

Id. at 1283 (emphasis supplied) (citation omitted).

The above-quoted passage conclusively resolves this question. As applied to

the facts here, even though all of the beneficiaries are Florida residents, Florida has

little interest in applying its law on this particular issue. Because limiting potential

beneficiaries limits recovery --- which appears to be what will happen in this case

if Florida law is held to apply to damages --- and because the "only purpose" of

limiting the beneficiaries is to protect defendants --- which should not be applied

when the defendant, as here, is a non-domiciliary --- the domicile of the plaintiffs

is entitled to little weight in the choice-of-law analysis.[11]

In sum, three of the "most significant relationship test" factors identified in

_____

[11] The United States contends, as the district court held, that Foster can be distinguished because "[t]here, although the decedents' domicile was in Florida, their sole heir was an Illinois resident at the time of the accident. In contrast, here, the decedents, their estate representatives, and the other potential survivor beneficiaries are all domiciled in Florida." We believe this to be a distinction without a difference. To be sure, as emphasized in the text, Foster explained that its holding would be the same "[e]ven if all plaintiffs are considered Florida residents[.]" In other words, Foster contemplated and specifically rejected the exact same basis on which the district court and United States have sought to distinguish the opinion.

19

Restatement § 145 clearly point to Texas, while the fourth "should be discounted" and is entitled to little weight on the facts of this particular case. Consequently, the law of Texas controls as to both liability and damages. The district court thus erred in applying Florida law and dismissing the appellants' complaint.

## VI.

The judgment of the district court is hereby REVERSED, and this matter is remanded to the district court for further proceedings consistent with this opinion.

COX, Circuit Judge, specially concurring:

I join Judge Vinson's opinion for the court except for Section IV. I concur in the court's judgment on this appeal, but I have some reservations about Section IV's analysis.

The threshold issue in this case is not whether the Plaintiffs have capacity to sue. It is whether these Plaintiffs have a cause of action under the Federal Tort Claims Act—whether, in other words, the Plaintiffs have a "right that can be enforced by legal action." *Black's Law Dictionary* 1438 (9th ed. 2009); *cf. Am. R.R. Co. of Porto Rico v. Birch*, 224 U.S. 547, 557–58, 32 S. Ct. 603, 606 (1912) (comparing two death benefits statutes, one of which gave a "right of action" to a personal representative only and the other of which gave a "cause of action" to surviving spouses, children, and parents). The concept of capacity of sue under Fed.R.Civ.P. 17(b) and that of who has a cause of action are distinct concepts. *See* Charles Alan Wright, et al., 6A *Federal Practice and Procedure* § 1559 (3d ed. 1998) ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest . . . ."). Rule 17(b) is a procedural rule that does not decide who has a cause of action and who does not. *See De Franco v. United States*, 18 F.R.D. 156, 159 (S.D. Cal.) (explaining that the question of capacity to sue "raises only the question of whether the plaintiff is free from general disability such as infancy, insanity or some other form of incompetency," and that a lack of capacity would not "preclude one from possessing a cause of action"). A party cannot properly use Rule 17(b) to challenge an opponent's cause of action.

The principal issues in this case are (1) whether Texas law applies to determine whether these Plaintiffs have a cause of action under the Federal Tort Claims Act, and (2) if so, whether these Plaintiffs have a cause of action for wrongful death under the Federal Tort Claims Act. I

21

have no doubt that this court correctly concludes that Texas law applies and that these Plaintiffs have a cause of action under the Federal Tort Claims Act that is supplied by the Texas wrongful death statute.

That being the case, they have the capacity to sue within the meaning of Rule 17(b).  No issue questioning their capacity is presented.  I therefore find it unnecessary to decide whether Rule 17(b) applies in a case under the Federal Tort Claims Act, and I would save this issue for another day.  If, for example, one of these Plaintiffs was a minor or an incompetent person (which is not the case), perhaps Rule 17(b) is applicable.  We need not decide that question here.